No. PD-0729-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

JAMES A. BROWN

V.

THE STATE OF TEXAS

ON PETITION FOR REVIEW FROM

THIRD COURT OF APPEALS

TEXAS, AUSTIN, TRAVIS

NO. 03-13-00760-CR

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 12 2015

Abel Acosta, Clerk

MOTION TO AMEND

PETITION FOR DISCRETIONARY REVIEW

AND BRIEF IN SUPPORT

FILED IN
COURT OF CRIMINAL APPEALS

AUG 12 2015

Abel Acosta, Clerk

TO THE HONORABLE JUSTICES OF THE COURT OF THE CRIMINAL APPEALS.

COMES NOW JAMES ARTHUR BROWN, PRO SE, IN THE ABOVE-ENTITLED AND NUMBERED CAUSE AND MOVE THE COURT TO AMEND PDR PURSUANT TEX. R. APP. PROC. 53.8 AND 14th U.S. CONST. AMEND., AND SHOWS:

I. CAUSE FAIRLY APPEARS TO REST PRIMARILY ON FEDERAL LAW OR TO BE INTERWOVEN WITH FEDERAL LAW, WITH QUESTION REGARDING ADEQUACY OF STATE RULE ON WHETHER, IT IS FIRMLY ESTABLISHED AND REGULARLY FOLLOWED IN FAILURE TO GIVE A PARTY FAIR NOTICE OF ADVERSE ACTION AND PROCEDURE.

MOTION TO AMEND                    (1)

II. THAT NEW FACTUAL EVIDENCE FOR THE CLAIM COULD NOT PREVIOUSLY HAVE BEEN DISCOVERED THROUGH DUE DILIGENCE.

III. FAILURE TO CONSIDER NEW EVIDENCE WILL RESULT IN FUNDAMENTAL MISCARRIAGE OF JUSTICE.

IV. EXTRAORDINARY CIRCUMSTANCES EXIST ESTABLISHING A CONSTITUTIONAL VIOLATION WHERE PROBABLY IT HAS RESULTED IN THE CONVICTION OF ONE WHO IS ACTUALLY INNOCENT.

JULY 16, 2015                           James A. Brown

                    ORDER
    ( ) GRANTED              ( ) DENIED

NO. _____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

JAMES A. BROWN

V.

THE STATE OF TEXAS

## BRIEF IN SUPPORT

BROWN CLAIMS HE HAS EXHAUSTED STATE REMEDIES AND THAT THE LANGUAGE OF EXTRANEOUS OFFENSES, HEARSAY, LOSS OF PLE BARGAIN AND TRIAL COURTS LACK OF JURISDICTION IN THIS AMENDED PDR REFLECT ENHANCEMENT OF CLAIMS ALREADY PRESENTED TO DEMONSTRATE EGREGIOUS HARM, THEREFORE, SO LONG AS ANY REFORMULATION DOES NOT FUNDAMENTALLY ALTER THE CLAIM PRESENTED [VASQUEZ V. HILLERY, 474 U.S. 254, 266, 106 S.Ct. 617, 88 L.Ed 598 (1986)] THEN HE MAY SUPPLEMENT AND CLARIFY THE RECORD. BROWN MAY PRESENT NEW MATERIAL SUPPORTING FACTS ALREADY IN THE RECORD OR CITE ADDITIONAL INSTANCES OF THE SAME ALLEGED VIOLATION [KNOX V. BUTLER, 884 F.2d 849, N.7 5th CIR. [LA.] 1984 CERT. DENIED, 494 U.S. 1088 (1990) -- PERMITTING DIAGRAM OF CRIME SCENE ALTHOUGH NOT PRESENTED TO STATE COURTS]. IN LIGHT OF NEW EVIDENCE FROM DEPUTIES IN SUBSEQUENT CIVIL TRIAL IN THE 98 JUDICIAL DISTRICT, AT AUSTIN, TRAVIS COUNTY, TEXAS, IN CAUSE NO. D-1-FM -006145; IT IS MORE LIKELY THAN NOT THAT NO REASONABLE JUROR WOULD HAVE FOUND BROWN GUILTY BEYOND A REASONABLE DOUBT WHEN

BRIEF IN SUPPORT
TO AMEND PDR

(1)

DEPUTIES TESTIFIED THAT BROWNS ACCUSERS WERE LAUGHING AND HAD HE DONE AN OVERT ACT THEY WOULDN'T HAVE HESITATED TO ARREST HIM. SEE CALDERON V. THOMPSON, 523 U.S. 538, 118 S.Ct. 1489, 1503, 140 L.Ed. 2d 728 (1998).

ALTHOUGH A "FUNDAMENTAL MISCARRIAGE JUSTICE" HAS NOT BEEN CAREFULLY DEFINED, IT APPEARS NECESSARY TO ESTABLISH AN ARGUABLE CLAIM OF FACTUAL INNOCENCE [SEE DUGGER V. ADAMS, 489 U.S. 401, 410 N.6, 109 S.Ct. 1211, 103 L.Ed. 2d 435 (1989); HARRIS V. REED, 489 U.S. 255, 271, 109 S.Ct. 1038, 103 L.Ed. 2d 308 (1989)]. BECAUSE ACTUAL INNOCENCE MEANS FACTUAL INNOCENCE UNDER LEGAL INSUFFICIENCY STANDARDS, BROWN SHOWS THE ERRONEOUS INSTRUCTION SO INFECTED THE ENTIRE TRIAL THAT THE RESULTING CONVICTION VIOLATES DUE PROCESS AND EQUAL PROTECTION. THE EVIDENCE OF ASSAULT, AND AGG. ASSAULT, AND RETALIATION WAS SO AMBIGUOUS AND CONTRADICTED THAT ACTUAL PREJUDICE RESULTED FROM THE INSTRUCTION. CONSTITUTIONAL ERROR PRECLUDED THE DEVELOPMENT OF TRUE FACTS AND RESULTED IN THE ADMISSION OF FALSE ONES. THIS IS ESPECIALLY TRUE WHEN RECORD SHOWS THAT THE STATE ELECTED NOT TO CHARGE BROWN WITH THE "ALLEGED THREATS" BUT RATHER ASSAULT AND AGG. ASSAULT. ACTUAL INNOCENCE CLAIM LIMITED TO INDICTMENT ALLEGATION OF DEFENDANT. BOUSLEY V. UNITED STATES, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed. 2d 828, 839 (1998); MORE V. STATE, 531 S.W. 2d 140 (TEX. CR. APP. 1976).

THE QUESTION OF WHETHER A STATE PROCEDURAL RULING IS ADEQUATE IS ITSELF A QUESTION OF FEDERAL LAW [LEE V.

KEMNA, 534 U.S. 362, 375 2002)]; WITH REGARD TO THE ADEQUACY OF THE STATE RULE IS WHETHER IT IS "FIRMLY ESTABLISHED AND REGULARLY FOLLOWED"[LEE, 534 U.S. AT 376]. EXHAUSTION MAY ALSO BE EXCUSED IF REQUIRING IT WOULD PREVENT THE VINDICATION OF FEDERALLY PROTECTED RIGHTS. HILLEGAS V. SAMS, 349 F.2d 859, 862 (5th CIR.[MISS] 1965). NEW FACTUAL TESTIMONIAL EVIDENCE ESTABLISH THAT COMPLAINANTS WERE NOT IN FEAR AND LAUGHING, THAT THERE WAS NO IMMENENT BODILY INJURY THREATS AND IF A CRIME WAS COMMITTED DEPUTIES WOULD HAVE ARRESTED BROWN.

ATTACHED IS THE NEWLY DISCOVERED EVIDENCE, AND THE PETITION FOR DISCRETIONARY REVIEW IN ITS AMENDED FORM.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON THIS __16th__ DAY OF ___JULY___, 2015, A COPY OF THE FOREGOING DOCUMENT WAS MAILED BY DELIVERING IT TO A PRISON OFFICIAL FOR MAILING UNDER THE INDIGENT POLICY, TO THE CLERK FOR THE COURT OF CRIMINAL APPEALS P.O. BOX 12308, CAPITOL STATION AUSTIN, TEXAS, 78711 AND SERVED UPON TRAVIS COUNTY DISTRICT ATTORNEY'S OFFICE P.O. BOX 1748 AUSTIN, TX 78701.

Q. And Officer Duncan is the same Officer Duncan who just walked out the door; is that correct?

A. Yes.

Q. What was James doing?

A. When?

Q. I'm sorry? What was James doing at that time whenever you were around and everybody was around after the trial?

A. He was waiting for the elevator.

Q. Okay. Was he saying anything?

A. Yes.

Q. Could you make out anything he was saying?

A. Some of the stuff I could make out, but I couldn't make out everything that he was saying.

Q. Okay. And whatever he was saying, did he ever make a move or appear that he was directing this at any of the attorneys?

A. No.

Q. And did you perceive that he committed a crime when he was there?

A. No.

Q. Had he committed a crime, would you have had any hesitation to arrest him?

A. No.

Q. Do you arrest people when you witness a crime?

A.   Yes.

Q.   Did you ever hear any of the attorneys and caseworkers sort of talking together and conferring with each other about that Mr. Brown had threatened them?

A.   After he left they were laughing about him saying something to the fact of he knew where they lived.

Q.   They were laughing?

A.   Yes.

Q.   Did you have an occasion to witness any part of the trial itself?

A.   A little bit, but I don't really -- it was like towards the end.

Q.   Did you ever see the district attorney and the attorney ad litem laughing in the courtroom?

A.   No.

          MS. HALL:   Pass the witness.

                    CROSS-EXAMINATION

BY MR. WILLIAMS:

Q.   Officer, let me ask, were you called as a witness in this criminal trial?

A.   Yes.

Q.   And you testified just as you have today?

A.   Yes.

Q.   Now, were you contacted by the defense

attorney, Mr. Frank Ivy?

A.    I believe so.

Q.    And Mr. Brown has indicated that his attorney railroaded him and implied to me, at least, that he was in league with the prosecutor or didn't do a good job. Is that your impression from what part you met of Mr. Ivy -- what you observed of Mr. Ivy?

A.    I was only in there a short period of time so I couldn't really tell you.

Q.    But did it look to you like he was in league with the prosecution?

MS. HALL:    Objection.  I don't think the witness is competent to answer that.

THE COURT:    Sustained.

Q.    (BY MR. WILLIAMS)  He was alert, though, in asking questions that appeared to favor Mr. Brown; is that correct?

A.    Yes.

Q.    And you indicated that the attorneys were laughing.  Is that that nervous laughter that we often times tend to do when we are scared but trying to put up a great front?

A.    No.  They were just laughing.  I didn't feel they were scared at all.

Q.    You didn't feel like they were scared at all.

A.    Yes.

Q.    All right.    So a prosecutor who believes that their life has been threatened, it's not unreasonable for them to file charges, is it?

A.    No, it's not.

MR. WILLIAMS:    I pass the witness.

MS. LEVAY:    Pass the witness.

MS. OCHOA:    No questions, Your Honor.

REDIRECT EXAMINATION

BY MS. HALL:

Q.    Was it reasonable for Ms. Joseph or anybody to think that they were being threatened?

A.    While I was there I didn't feel like he was a threat because I was there with the district attorneys. So I didn't believe it was a threat.    And I didn't make out -- I couldn't make out what he was saying because he was rallying off and he was angry.    And through my experience, through a termination, if you lose a child they are usually a little mad.    And I just let them get off their steam.    But I didn't hear any threats.    If it was, I didn't hear them.

Q.    If you felt you would have saw a crime committed, you wouldn't have hesitated to place them under arrest, would you?

A.    I wouldn't have hesitated at all.    I would have

handcuffed him and put him in jail.

Q. If you would have heard something about "I know where you live," would that had impacted at all your perception of the threat?

A. If I would have heard that, I would have probably arrested him. But I did not hear that.

MR. WILLIAMS: No further questions.

MR. LEVAY: No questions.

MS. OCHOA: No questions.

THE COURT: You can step down. Thank you.

(Witness exits courtroom)

MS. HALL: I now call Officer Arnold.

(Witness sworn)

PORSHE ARNOLD,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MS. HALL:

Q. Good morning, Officer Arnold. Would you please state your name for the record?

A. Porshe Arnold.

Q. How do you spell your first name?

A. P-o-r-s-h-e.

Q. How are you employed?

A. I'm a deputy sheriff with the Travis County Sheriff's Office.

elevators, and the caseworkers were at the bench, and I was at the far end of the bench close to the stairs.

Q. (BY MS. HALL) Would you say that you were closer to James and his mother than the caseworkers were or farther?

A. Farther.

Q. So they were closer than you?

A. Yes, ma'am.

Q. And did you perceive James to commit a crime that day?

A. He was in violation in the sense that he was threatening.

Q. He was threatening?

A. Yes, ma'am.

Q. Do you feel that he should have been arrested right then and there?

A. Had he done an overt act, yes, I would have arrested him then and there. We were trying to keep the peace.

Q. Did he direct any threats to any of the caseworkers?

A. I know that he said specific language to state, "I know where you work." Things of that nature.

Q. Okay. And did -- was it directed -- did he move bodily towards any of these caseworkers?

A. He was swaying back and forth, walking back and forth. I know that he was upset, because the elevators took so long, and the longer he waited, the louder his voice got.

Q. Okay. And did he physically approach any of the caseworkers?

A. No, ma'am.

Q. Did you see the caseworkers after James left?

A. Yes.

Q. Did you see them talking and conferring among one another or hear anything about what they said about that he was threatening them and they should call it in?

A. I didn't see that part, ma'am, because I followed him downstairs. He took the elevator and I took the stairs to make sure he vacated the building.

Q. So did you see them laughing about what he had done?

A. I know they were conversing, but I'm not sure if they were laughing.

Q. Did they seem shaken up?

A. They were concerned.

MS. HALL: Pass the witness.

CROSS-EXAMINATION

BY MR. WILLIAMS:

Q. Sergeant Sloan, isn't it unfortunately true --

MR. LEVAY: Pass the witness.

CROSS-EXAMINATION

BY MS. OCHOA:

Q. Hi, Sergeant Sloan. I just have one question. You testified that you walked down the stairs while he was taking the elevator so you could make sure you escorted him outside the building or vacated building?

A. Yes.

Q. Is that normal for you to do that?

A. Yes, it is.

Q. Okay.

MS. OCHOA: No further questions.

REDIRECT EXAMINATION

BY MS. HALL:

Q. I just want to clear up something. Okay. So did you pretty much go on the stairs as soon as he and his mom got in the elevator?

A. Yes.

Q. So you didn't see the caseworkers, or who you are calling the caseworkers, talking afterwards?

A. No. Because I followed him.

Q. Okay. Thank you, Officer.

MR. WILLIAMS: No further questions.

MR. LEVAY: No further questions.

MS. OCHOA: No questions.